at all, argument not to exceed 15 minutes per side. Mr. Aaron Smith, you may proceed for the defendant. Good morning, your honors. May it please the court, counsel, I'm Aaron Smith on behalf of the appellants, Adair County Sheriff Deputies Kenny Perkins and Joey Keith. I want to go directly to the issue of excessive force first, Fourth Amendment question. Deputies Keith and Perkins were dispatched to a situation that was the very definition of tense, uncertain, and rapidly evolving as defined by the Supreme Court in Graham v. Connor. In that situation, a review of a Fourth Amendment claim of excessive force requires that the deputies actions be judged from the perspective of a reasonable officer at the scene and not with 20-20 vision of hindsight. The district court entirely failed to do that and we asked the court to review from that perspective. Excessive force claim, obviously three factors in play, the first being the severity of the crime at issue, wanton endangerment, class D felony was the crime at issue here, which the court below found was sufficiently severe and we believe that's well established at this point. The second question would be the whether Mr. Green posed an immediate threat to the safety of the officers or others, and he did. The scenario that we had here was that Mr. Green's mother had called 9-1-1 and reported that her son was packing a can of gas and a lighter and spreading gas everywhere. And dispatch relayed to the deputies. We have to view the facts in the light most favorable to him and in your reply brief you cite a block quote of his, so let me take it from there. As I understand his view, he's at the fence, the police order him to drop the gas and the Bible. I know he first pours it on himself, he then drops the gas can, he drops the Bible, the mom intervenes and says don't shoot him, just cuff him. You all tell her to get out of the way and then tase him. Is that occurring in that correct synopsis? Generally, yes, generally. So police officers are trained, I think, pretty well known, they're trained not to tase, if they tase someone who has gas on them it will ignite. And I think Keith or I can't remember one of them in their depositions admitted that if they tased him he would invite. So the safety to him, which usually they can protect, isn't at play here because whether he lit himself or the cops lit him on fire, one or the other way he was going to get lit on fire. So what was the danger that the officers perceived to themselves or her? Because once he drops the gas can, what's the danger to anyone else? They had been told that he had a lighter. His mother reported to dispatch. I listened to it, I know. So it's dark, my officers arrive and within seconds they're there with Mr. Green, he's covered in gas, they observed him do that. To the best of their knowledge, he has a lighter in his hand. They actually observed the lighter as their testimony. I know there's an ultimate dispute as to whether a lighter was present. I think we concede, for purposes of this appeal, no lighter. The danger, the risk of physical harm is that if he goes in flames, either of his own volition or otherwise, and he's not been tased so that he can be under control, could he run and grab his mother? Could he run towards the deputies? There's no telling what someone... At that point, that's my question, at that point was he complying? No, he was not. They had told him to get on the ground and he had refused to do that. At that point, he did drop the gas can, concede that. But to their testimony, at the same time, he's got the lighter out and is actively flicking the lighter. So I would say that that is non-compliant with officer's orders at that point. So, risk of harm to the mother, she's in close proximity, there's some differing testimony as to how far away and the timing of things. This all happened in seconds. And you viewed the video, you can see how quickly it all occurs. You're talking about the surveillance video? Yes. And the testimony of the parties involved. Of course, in a dramatic situation like this, memories get distorted, that's just part of being a human. But undoubtedly, this all unfolded very quickly. So, faced with essentially an unwinnable situation with an individual covered in gas, who they observe at least and have a reasonable belief that he's holding a lighter, the decision to use the taser was reasonable to mitigate the risk of serious harm. Even though they knew that it would likely catch him on fire? Yes. I mean, you're left with a terrible choice. You're saying that's better than him catching other people on fire?  By lighting a lighter and exposing the gas? Correct. Could they have handcuffed him, like the mother asked? Well, at that point, you're asking an officer to go hands-on with an individual covered in gasoline who they, again, have a reasonable belief is holding a lighter. And I'm not sure that's a reasonable ask of an officer at that point with a resistant suspect, who's very at risk of going up in flames at any moment, to ask them to go hands-on with him. And I would also add, that we ask officers to act objectively reasonable in the split-second decisions they have to make. It's not fair to go back and say, well, you could have done this differently, when they don't have the time, as we do now, to sit back and observe and decide what they should have done. Do we have to decide the Fourth Amendment question? I think you do. Ultimately, this is a pivot a little bit. I think the law is not even clearly established. I guess that's where you're going and that's where I'm going. I don't think that the right here is clearly established. Is that the easiest way to decide the case? I think it is. I really do. It's clearly established. What's that? Meaning clearly established. Assuming that this violates his constitutional rights, I mean, I couldn't find a case like this. If there's some question as to objective reasonableness, I think the clearly established question is determinative here, and that this right is not clearly established. There's a dearth of case law on point. The one case that we did cite out of the Fifth Circuit, Ramirez, actually points towards... That's a little different facts. Little different, but it's the closest that anybody's been able to find. And in that case, the Fifth Circuit... That was no Fourth Amendment violation. They didn't decide, right, clearly established. They just said no Fourth Amendment. They did. Because he was threatening to burn down the house. They did. But... They need a case that establishes a Fourth Amendment violation. And that Fifth Circuit case said, no, under these facts, there's not a Fifth Amendment violation.  So, I mean, I was looking to see if I could find a case that this violates the Fourth Amendment. I couldn't find one. There is none that I could find. And I think that question alone is determinative for this court on the issue of the Fourth Amendment excessive force violation. If no other questions on that, I would pivot over to the malicious prosecution and... Why do we have jurisdiction over the state claim? Because the state claim, the state doesn't give QI. So how do we have interlocutory jurisdiction when Kentucky doesn't give it? The state gives qualified official immunity over state law claims. And so, slightly different analysis, but it remains a question of immunity. But I thought over malicious prosecution in particular, Kentucky does not give qualified immunity. Not blanket, but they do in certain scenarios, is my understanding. And I would add, while you're speaking to the malicious prosecution on the state law claim, Kentucky adds a level of malice. So you have to prove malice in malicious prosecution that you do not under a 1983 claim. The district court did not analyze that issue. Martin v. O'Daniel, Kentucky held, the Supreme Court held that qualified official immunity is, I'm quoting, unavailable in a malicious prosecution action. I'd have to look at that, Your Honor. Okay. I will concede that. Do you agree if it's unavailable, we don't have jurisdiction over the claim? On this interlocutory appeal, and strictly with regard to malicious prosecution, I would agree. With regard to the other state law claims, I think that you do on qualified official immunity, and the other two are assault and battery, slash, and false arrest. And I do think it's undisputed that qualified official immunity does apply to those. Again, the district court, instead of analyzing all of these questions, analyzing immunity, said, well, we got a fact dispute over the lighter, so I can't look at this. That's, again, we're now looking at this with the benefit of hindsight, as opposed to what the officers on the scene observed. Well, does it really matter if he had a lighter or not? I mean, isn't the crucial issue is whether they had a reasonable belief that he had a lighter? Yes, exactly. I think the district court kind of went astray by saying, well, we have a factual dispute, whether, in fact, a lighter existed. Well, I think that's beside the point, because we determine whether it's a reasonable belief, right? I agree, Your Honor. Okay. They say that their belief is reasonable because that's what the mother told the dispatcher, the dispatcher told them that. And I guess these questions are probably for the other side. There's nothing to dispel that. They didn't see the lighter. Well, they say they did see the lighter, I guess. They claim that they didn't see it. But I don't think there's anything to dispel their reasonable belief. Correct. The plaintiff's best evidence is that no lighter was found at the scene afterwards. Well, how do you explain that? Why would it not be found? My officers think that somebody picked it up and took it away. Now, that's a factual dispute. They didn't secure the scene after the... Deputy Perkins went in the ambulance with Mr. Green. Deputy Keith stayed on the scene and collected evidence. He testified to what he did and didn't do, what he could and couldn't find at that time. Of course, it's dark out there. We're out in the country at this point too. Well, interestingly enough, he was holding a Bible and they never found the Bible. Never found the Bible. Yes. And there's something to do with clothing, that they didn't preserve the clothing to determine whether the gas was on the mother or not on the mother. So, this was not the best preserved scene. Or the deputies were not provided all the actual evidence from the scene. And that's a factual dispute that I'm not dragging into your issues today, Your Honors. I've got just a minute here. I do want to speak to the 1983 malicious prosecution and false arrest claims. Mr. Green was indicted under the Harwood case. That indictment is a presumption of probable cause. Plaintiffs have argued that Deputy Perkins made false statements in his grand jury testimony in order to secure the indictment. First of all, they have to show more than grand jury testimony under Harwood. Those are the absolute immunity for grand jury witnesses. Secondly, even if you take their complaints about Deputy Perkins' testimony and just set it aside, which is what this court would also have to do under that scenario, the facts still establish probable cause for the charge of wanton endangerment. And so, set all this stuff about false testimony aside, at the end of the day, the facts still establish probable cause under these facts before the court. I'm about out of time, so if the court has any questions, I'm happy to... Any further questions, Judge McKee? No, thank you. Thank you. All right, you'll have your three minutes rebuttal, Mr. Smith. Good morning. Good morning, Your Honors. Aaron Kemper on behalf of the appellee, Jason Green. I'd like to first address the clearly established law. The Sixth Circuit has said that gratuitous or excessive use of a taser does violate clearly established law, particularly when the subject is not fleeing. Jason was not fleeing at the time. Well, the case on point, the only published case that you point to is Browning, correct? Yes, Your Honor. And Browning says, and I'm reading, it was clearly established in this circuit that an individual has a constitutional right not to be tased when he or she is not actively resisting, correct? And then later in Browning, it defines active resistance and it says, and I'm quoting again, in Thomas, we noted active resistance generally means physical struggles with police, that didn't happen here, threats towards officers, we can debate that, refusal or resistance to being handcuffed, that didn't happen. But here's the kicker, or erratic or irrational behavior. Why doesn't your client fit squarely within erratic or irrational behavior, which means not only was it not clearly established, but the officers, we have affirmatively blessed the use of a taser in this circumstance. Well, I mean, Your Honor, I understand, and we also have, I mean, there are other taser cases that you can point to for authority on, that he's not committing a crime. But my point is, is we've defined when they can use a taser and we've said when someone is acting erratic or irrational, what's more erratic or irrational than being on meth and pouring gas on yourself and believing he has a lighter from the phone call that was relayed? Well, I understand. Now, addressing the lighter, I mean, as we've stated over and over again, there was no lighter. I mean, no lighter was ever recovered. But you're mistaken. The mistake the district court made here, with all due respect, is they said no lighter, no qualified immunity. That's not, I think your opponent on the other side states it correctly, it's the reasonable belief of the officers. Casella, the Supreme Court's pretty clear in Casella and Lemonex or Moulinix and those cases, that it's the reasonable belief of the officer and there's no disputing that I see that she called and said there was a lighter, they perceived there to be a lighter. And at the same time, even if there wasn't a lighter, why isn't erratic or irrational behavior, why isn't this quintessential erratic or irrational behavior? Well, because when you say erratic or irrational behavior, the erratic behavior, you're saying pouring gasoline on yourself is erratic behavior. But we know tasing him is going to harm him. That's the only way that he's going to go up in flames is when you tase him. Or if he lights himself. Or if he lights himself on fire. And if there's no lighter, he cannot light himself on fire without a lighter existing. Again, it's their reasonable belief. But what's not reasonable, Your Honor, is that misconstrues the facts that they testified under sworn testimony for four and a half years. They never said we appeared what we thought was a lighter. They testified under oath. But let's ignore whether they actually said they saw a lighter or that he was flicking a lighter. You can't dispute, can you, that the mother told dispatch that he had a lighter and dispatch told the police officers that were responding that he had a lighter. Yes, Your Honor. Because you do misquote what is in the transcript. And so when we correct that, it seems like there's no dispute that they had a reasonable belief he had a lighter, whether it existed or whether they saw it or not. But once they arrive, okay, and they approach him, and he is complying, he is... And you're presupposing the crime here that they have to observe him. It's a felony, wanton endangerment. With no lighter, with no threat, he's not committing wanton endangerment if they don't observe him holding a lighter. I mean, if someone says, I think... It could be in his pocket. Just because he doesn't have it in his hands doesn't mean it's not on his person, does it? Well, Your Honor, again, that misconstrues the facts. They said that he had it and that he was flicking it. Yeah, I know that. But say that's wrong. If he had it in his pocket, I mean, it would be on his person and that'd be sufficient, wouldn't it? It would not be sufficient, Your Honor, because again, even if it's in his pocket, tasing him is going to make him erupt in flames. So he's not threatening. This is very different than Ramirez. He's not saying, I'm going to kill myself. I'm going to... Why is he dousing himself in gasoline now? Your Honor, he was high on meth. We acknowledge that. I know, but what's the point of dousing yourself in gasoline if it's not to set it on fire? I mean, you don't clean yourself with it, or what else happens? What would you have the police do here? Because they're really in a Catch-22 situation, and what would you have them do that they did differently? Well, they could handcuff him and arrest him at that moment. You would have them handcuff him? There was nothing... But if they approached him and he did have the lighter, then the officers would theoretically be burned as well, would they not? I mean, Your Honor, that's not what happened. I mean, I understand you're saying, if they approached him and... I know that, but... Hypothetically... We're trying not to decide this in hindsight. We're trying to... It's a quickly evolving situation, and we don't do it in hindsight. We kind of look at what the officers knew at the time they knew it, and they had to make a split-second decision. But you say they should have handcuffed him. Well, yes, Your Honor. I mean, they clearly could have handcuffed him. Would they have had to have gone, as we say, hands-on in order to handcuff him? I mean, there was no evidence on the record that he didn't comply. I mean, they could have just put your hands up. He can't... Would they have had to put hands on him in order to handcuff him? Well, yes, Your Honor, but they could put their hands... And when they're doing that, would they more likely than not get gasoline on themselves? Well, Your Honor, if his hands are in the air, even if they get gasoline on themselves, no one's going to be lit up in flames. I mean, even this hypothetical that Judge Griffin said... You don't handcuff somebody with their hands on the air. Well, they could approach him. What, are you going to get a stepladder and climb up to put the handcuffs on? No, Your Honor. His hands are in the air. As they approach him, they remove the hands behind his back, and they handcuff him. They say they take it and... And is it reasonable for them to believe they would have gotten gasoline on themselves in doing that? Your Honor, even if they get gasoline on themselves, you can't start a fire without a spark. A gasoline on themselves is still not a threat to them. Gasoline alone is not a threat to anyone. Gasoline only becomes a threat once you add a spark to the situation. I think these are really interesting arguments, but back to where we were before. Do you have any case that factually comes close to what we have here, where there is a reasonable belief that he had a lighter, whether he did or didn't actually have the lighter? Well, Your Honor, we don't have exact facts regarding gasoline, but... What's your best case? I mean, our best case, I think it's the Graham factors going through, just the simple analysis that we go on excessive force. I think when you go through each factor under Ramey v. City of Niles, even the things where they talk about a reasonable officer... Graham's your best case. And Ramey or Landis v. Baker, all of the Taser cases, Kowalski v. City of Niles, Cockle v. City of Cincinnati, they're all saying a non-resistant individual, tasing them, you have an established right not to be tased. I mean, adding gasoline to the equation doesn't... I mean, the problem for you is Browning has defined active resistance to include erratic or irrational behavior. So he is, under the definition of Sixth Circuit law, a resisting individual. Well, I mean, Your Honor, he may have been erratic, which is what caused the phone call, but it happens... He was erratic in front of them. He was pouring gasoline on himself. I understand, but there's no evidence he didn't comply. There's no evidence that he threatened anyone, that he was a threat to anyone. And again, his parents were right there. They never saw any lighter. And I think what's not reasonable is for the deputies that changed their story over four and a half years at grand jury testimony, saying they saw a lighter. One said he flicked it three or four times. The other deputy said it wasn't sparking, but then he lit himself on fire. He ran 20 yards and I tased him to get him on the ground. I mean, these deputies didn't even admit that they were the reason that he was set on fire. One deputy said he set himself on fire and I tased him because I thought he was dangerous running around. He was never running around. The security footage shows he wasn't running around. Security footage really doesn't show anything at all. We've looked at it. It's so dark that you can't even see him until all of a sudden there's a ball of fire. Is that accurate? That is accurate, Your Honor, but you can see that he didn't run 20 yards, which was the testimony before. How would you know whether he ran 20 yards or not if you don't see him before there's a ball of fire? I mean, they said he ran 20 yards after he was on fire is what the deputy stated. And you can clearly see the security footage. The ball of fire is not moving across the screen. Oh, I see what you mean. And so while it's very grainy, it does show. And there is a pop pop taser. The taser and the eruption is instantaneous. So while it's very grainy, it does show that the evidence that the taser was the cause of the flames. And so, you know, what we're dealing with in this situation is they've changed their testimony over and over again. So when they went to the grand jury, they said that he was pouring gas on his mother and the clothes of the mother showed no gasoline. So when you're talking about preserving evidence, they did gather evidence of his mother's clothes. They gathered his clothes. Obviously, his clothes showed strong traces of gasoline because there's no dispute he poured gasoline all over himself. The mother's clothes had no gasoline. He stated to the grand jury that he was threatening to burn vehicles and harm his parents. That never happened. You heard the 911 call. There's no mention of burning vehicles. So these deputies were creating a case on the one endangerment. That's what distinguishes this from these other cases. This isn't a reasonable belief. This isn't a, oh, my bad, I thought he had a lighter. He didn't have a lighter. If that had been their testimony four and a half years ago, that's still not, that's not enough to charge someone with wanting endangerment. And because you thought he had a lighter, didn't, it might justify their force at that time, but that's not what happened. So, you know, retro saying, well, we thought he had one, but he didn't. That's the, that fact was created by opposing counsel for the purposes of this court of appeals. They've testified over and over again. He had a lighter and he was flicking it in our presence and he set himself on fire. Spreading gasoline all over the area is not wanton and dangerous. No, your honor. It's not your honor. Because again, I mean, a spark from something else could ignite it. I mean, even if he didn't have a lighter, I mean, say you have an electrical outlet or something or a short circuit, I mean, that, that, that spreading gasoline on a wide area in dangerous people, does it not? No, your honor, we were out in the field. We're on a farm. I understand there's no electric, um, when you say outlets around, we're not inside a house. We're not in an enclosed area. He's out on a farm. As he said, it was very dark. I think the opposing counsel called it out in the holler and we're out in the farm in Kentucky. Okay. So you're just saying it's unlikely it's going to ignite, but if it does ignite, I mean, it could burn down the neighborhood, whatever, uh, fire could spread. Uh, there is no dispute that his mother was in close proximity to him under any set of facts. She might not have been holding onto him or, or touching him, but she was right next to him. That's disputed your honor. And that the proximity is where to, where do, does your side say the mother and the father were relative to him when the police arrived? Well, when the police arrived, she was in proximity. She was close by him, but at the time of danger with all the gasoline, he had spilled. No, he poured gasoline on himself in the surrounding area. I thought, no, when they got there and they approached him, that's when he majorly, he, he was probably, he was leaking it before. She said on the 911 call, he's spilling gas, but the pouring it on himself, one calls that she was, he was spilling it all over the place, right? Yeah. He's spilling it all over the place, but that's different than pouring it directly on himself. She was not in proximity when he was pouring gas directly on himself. That is highly disputed. Gasoline all over the place. His mother is in the area. Isn't she in danger? Your honor, he's, he's outside. She had no gas on her clothes. He's spilling it all over the place outside, but the gas being spilled on in a, in a grassy field and you walk out to the grassy field, it's not going to immediately endanger you when you walk outside in this large area as well. How, how much time from the time that the police officers were on the scene and observed what was going on from the time that, uh, that they tasted? 32 seconds. All right. So basically what your contention is, is that the police didn't have enough information and they should have, they should have done more within that 32 seconds, even though they did see that he's pouring gasoline on himself. Um, yes, your honor. And do we have, back to where we were before, do we have a case that comes even close to those facts? Well, I mean, we have, again, we have the taser cases that say you have to be, you know, fleeing completely noncompliant to have a use of a taser. I mean, the justifiable use of a taser in this instance was not merited. And again, without a lighter, when you construe the facts in our favor and no lighter was ever recovered and his parents said he didn't have a lighter, Jason said he didn't have a lighter. So in the absence of a lighter, there is no basis for charging him with that crime. And they needed that lighter when they secured the indictment. They testified that he had the lighter. That's what secured it. So it, they're not construing the facts in our favor for this interlocutory appeal because when you construe it in our favor, it, they fabricated evidence. They made up things that weren't true. Their stories do not align. They said he was burning cars, threatening to hurt his, harm his parents, threatening himself and others. And that's just not in the record with no lighter. And my time is up, um, your honors, if you have any other questions. Any further questions? No, thanks. All right. Thank you, counsel. Uh, three minutes rebuttal. I'll, I'll be brief, your honor. I want to point out just a couple of things on, on the clearly established prong is the court is well aware citing to general taser cases that, that govern the use of taser. That's too much, too general, uh, uh, a level of scrutiny here. What, what is required to clearly establish a right is that it be beyond debate and that, that, that it is, um, any reasonable officer would have understood. Just to the fourth amendment question, why couldn't they order him to put his hands up as your friend says, and then cuff him? Well, again, we're now second guessing the officers split second judgments on the scene, which I think this court's precedence in the Supreme court. The real risk was him lighting on fire, right? At the point they're standing away from him, right? Why, why couldn't it just be, and I'm talking only about fourth amendment violation because you started with that. Why couldn't they just, they didn't try anything before they tased him. She got out of the way, they tased him. Right. I mean, I think again, it's a split, split second decision in a, in a dynamic situation where somebody has just taken the candidly unruly act of dumping gasoline all over themselves. I get it. As she, with, with, with mother in close proximity. So taking the time, he's moving away and she's saying cuff him. Sure. She wants what's best for her son. I have no doubt, but the officers have to do what's best for her, what's best for themselves. And, and in this scenario, they get to make a judgment and objective reasonableness, it's built in that the court gives deference to the officer's decision on the scene. And so that would be my response to that. They could have taken a hundred different actions, but they're not required to take the very best action. They're required to take a reasonable action. If the court has any other questions, I'm happy to address those otherwise. Anything further? No. All right. Thank you. Thank you very much. Case will be submitted. They call it the last case.